

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

NOBLE ROMAN'S, INC.,            )
             Plaintiff,            )
                               )
    vs.                         )       1:11-cv-135-SEB-DML
                               )
BRABHAM OIL COMPANY, BRABHAM )
OIL COMPANY d/b/a E-Z SHOP,     )
            Defendant.          )

## ORDER DENYING MOTION TO DISMISS OR TRANSFER

Plaintiff, Noble Roman's, Inc. ("Noble Roman's"), is an Indiana based company engaged in franchising the operations of its Noble Roman's pizza restaurants and express pizza installations.  Defendant, Brabham Oil Company ("Brabham"), operates several filling station/convenience stores in its home state of South Carolina.  Brabham entered into seven franchise agreements with Noble Roman's,  which allowed it to operate a "Noble Roman's Pizza Express" within seven of its stores, making and selling pizza, breadsticks and other related warm food items to its customers.  The franchise agreements authorized Brabham's use of various Noble Roman's trademarks, logos, service marks and indicia of origin in their stores for initial terms of five years.  Upon the expiration of the agreements, Brabham was to cease using the Noble Roman's methods, system and techniques and was no longer permitted to display in any manner the identification signs, marks and advertising displays utilized to distinguish the Noble Roman's brand.  Further, each of the agreements provided: "Title to the Noble Roman's Pizza Express facade

(which embodies Franchisor's Marks and trade dress) shall transfer to Franchisee and Franchisee may remove such facade from the Location."  A key dispute between the parties in this litigation is what precisely constitutes the "facade."

As part of the  "express" service at each of the seven locations, a food warmer was available allowing various menu items to be offered at the counter where a customer could quickly find and pick up the desired product from the warmer and take it to the cash register for purchase.  The warmer where the food is placed appears to be a relatively typical stainless steel unit with shelves on which the food items are placed and displayed in their individual containers.  The functional base of that unit is surrounded by an outer shell which, based on photographs submitted by the Plaintiff with its Complaint, serves both aesthetic and advertising purposes.  Its features include replaceable advertising/menu panels and a red ornamental mantel across the top which is arch shaped in the center.  It is this outer shell which is the subject of this litigation.  In its pleadings and briefs, Noble Roman's refers to the outer shell of the warmer as the "warmer wrap."  Brabham refers to it as the "facade."  We have reproduced a photo of one of those units in operation at a Brabham store while that store operated as a Noble Roman's franchise and have included it as an attachment to this order to facilitate our discussion.  (See Exh. A, which is Exhibit N to Plaintiff's Complaint).

Brabham chose not to renew its agreements with Noble Roman's and, following expiration of the franchise agreements, it entered into agreements with Domino's Pizza to

operate the Domino's version of an express pizza franchise. All advertisements and references to the Noble Roman's brand were removed from the outer shell of the original warmers. New advertising placards and menus were inserted into the outer shell displaying the unique marks and brand of Domino's. However, the structure of the outer shell at each store, including the red mantel, remained as it had been during operation as a Noble Roman's franchise. Noble Roman's claims that the red arch is a significant part of its trade dress, uniquely identifying its brand. Noble Roman's requests of Brabham to remove and return this part of the product display units to Noble Roman's were unsuccessful,[1] prompting it to bring suit against Brabham for Brabham's continued impermissible use of the "warmer wrap" which it claims is a violation of the Lanham Act as well as 11 U.S.C. § 1125, which forbids unfair competition. Noble Roman's also seeks relief on the basis of common law trade infringement and asserts that Brabham's continued use of the "warmer wrap" violates the franchise agreement as well.

Brabham has moved the Court to dismiss this case for lack of personal jurisdiction or, in the alternative, to transfer venue. It claims to have had no contact with the State of Indiana outside of this "happenstance" of having entered into a franchise agreement with a company based in Indiana. Brabham operated its franchises in South Carolina, and thus

---

[1]According to Noble Roman's, a photograph of one of Brabham's stores while operating as a Domino's franchise was featured on the Domino's corporate website. The photo showed that the "warmer wrap" or "facade" which the store originally used while operating as a Noble Roman's operation was still in use as part of the Domino's display. The cease and desist letters sent by Noble Roman's to Brabham also asked that this photo be removed from the Domino's website. Domino's is not a party to this litigation.

any legal or contractual violation occurred there. Brabham also argues a third basis for dismissal - a failure of the Complaint to state a claim, contending that the "before and after" photographs of the warmers which are now in use at its stores, copies of which Noble Roman's submitted with its Complaint, clearly demonstrate that no consumer could be confused as to the brand of pizza now offered at its locations. Again, for purposes of clarity, we have attached a copy of a photograph which Noble Roman's claims was taken at one of Brabham's stores depicting the warmers as they are currently displayed and utilized. (See: Exhibit B, which is page 3 of Exhibit L to Plaintiff's Complaint). In response to Noble Roman's alleged contract breach, Brabham rejoins that the contract expressly excludes the facade as trade dress and authorizes upon termination of the franchise Brabham's retention and use of the warmer and its facade.

After careful review, we conclude that each of these alternative grounds for dismissal is unavailing.

### *Personal Jurisdiction*

A court must undertake a two-step analysis in order to verify the existence of personal jurisdiction over a non-resident defendant. First, the court must determine whether personal jurisdiction in a particular case comports with the state's long-arm statute; second, the court must determine whether such an exercise comports with the Due Process Clause of the Constitution. *Id.* at 779. Because Indiana's long-arm statute,

Indiana Rule of Trial Procedure 4.4(a), "reduce[s] analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the [f]ederal Due Process Clause," we can limit our discussion here to the second step of the afore-referenced analysis.  *LinkAm. Corp. v. Albert*, 857 N.E.2d 961, 967 (Ind.2006).

Due process requires a defendant to have "certain minimum contacts with [a jurisdiction] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  These minimum contacts "must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 109 (1987) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  Such purposeful availment is required to ensure that potential defendants are able to reasonably anticipate the  conduct which will subject them to the jurisdiction of a foreign sovereign.  *Burger King*, 471 U.S. at 472.

Well established rules of law provide that personal jurisdiction may be either specific or general.  A court is empowered to exercise specific jurisdiction over a defendant, if the case or controversy "arises out of" the defendant's contacts with the forum state, thereby creating a "relationship among the defendant, the forum, and the

litigation." *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 (1984) (citations omitted).  In contrast, general jurisdiction exists if the defendant has "continuous and systematic" contacts with the forum state.  *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir.2002).  Where such continuous, systematic contacts exist, the court is empowered to exercise jurisdiction over the defendant regardless of the subject matter of the action.  *Id*.

In the case at bar, Noble Roman's does not contend that general personal jurisdiction applies to Brabham's contracts.  Rather, it argues that specific jurisdiction applies based on Brabham's having entered into a contract which specifically provides that the agreement was formed in the State of Indiana.  Further, Noble Roman's contends that Brabham's course of business with Noble Roman's included periodic calculations and transmittals of its sales-based franchise fees to Noble Roman's in Indiana.  Without disputing these assertions, Brabham argues that they are not sufficient to justify it being hailed into court in Indiana in the absence of a specific venue clause in the franchise agreement.

We find an opinion authored by our colleague, Judge McKinney, instructive here, entered by him in resolving a similar personal jurisdiction challenge which arose under a virtually identical franchise agreement:

> When Peaceful deliberately entered into a long-term Franchise Agreement with Noble Roman's, an Indiana corporation, it purposefully availed itself of the privilege of conducting business in Indiana.  *See Burger King*, 471 U.S.

at 473 ("[W]e have emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities.") (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)); *Woodmar Coin Center, Inc. v.. Owen*, 447 N.E.2d 618, 621 (Ind.Ct.App.1983) (stating that defendant "purposely availed himself of the benefits and responsibilities of doing business in this State by soliciting, negotiating and forming a contract with an Indiana resident"). By signing the Franchise Agreement, Defendants acknowledged that 1) the execution of the Franchise Agreement; 2) the acceptance of its terms; 3) the performance of certain franchise-related obligations; 4) payment of money, and 5) satisfaction of certain training requirements would occur in Indianapolis, Indiana.

*Noble Roman's, Inc. v. French Baguette, LLC*, 2008 WL 975078, *4 (April 8, 2008

S.D.Ind.). Likewise, Brabham could and should have reasonably anticipated being sued

in Indiana on claims arising under the franchise agreement, when it voluntarily entered

into that contract. We, therefore, hold that this court has personal jurisdiction over the

dispute and these parties.


**Transfer of Venue**


Brabham alternatively claims that the appropriate venue for resolving this dispute

is South Carolina. Invoking the federal change of venue statute, Brabham argues that the

interests of justice and the convenience of the parties and witnesses are better served by

transferring the case to the federal court in South Carolina. 28 U.S.C. § 1404(a).


The federal venue statute is intended "to prevent the waste 'of time, energy and

money' and 'to protect litigants, witnesses and the public against unnecessary

inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)(quoting *Cont'l Grain Co. v. Barge F.B.L.–585*, 364 U.S. 19, 26 (1960)).  Notably, § 1404(a) recites that, "for the convenience of parties and witnesses and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Transfer is appropriate where "the moving party establishes that (1) venue is proper in the transferor district, (2) venue and jurisdiction are proper in the transferee district, and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice." *State Farm Mut. Auto. Ins. Co. v. Estate of Bussell*, 939 F.Supp. 646, 651 (S.D.Ind. 1996). A district court has discretion to adjudicate motions for transfer of venue on a case-by-case basis. *Stewart Organization., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

We have previously determined that Brabham subjected itself to the jurisdiction of an Indiana court and that venue is appropriate in this district based upon the location of Noble Roman's principal place of business in this district.  We are certain that South Carolina would also have jurisdiction over the parties and subject matter of this action and be an appropriate venue, given that Brabham's operations are based in South Carolina and that the source of franchise fees from the sales at Brabham's stores are generated there.  The remaining considerations in determining venue are the convenience of the parties and witnesses along with the interests of justice.  On these factors Brabham must sustain a weighty burden.  It must prove that South Carolina is not just more convenient,

but "clearly more convenient" than Indiana. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986). In considering these convenience factors, we acknowledge that the plaintiff's choice of forum is important and is not to be minimized. *American Commercial Lines, LLC v. Northeast Maritime Institute, Inc.,* 588 F.Supp.2d 935, 945 (S.D.Ind. 2008).

We accept Brabham's assertion that at least for it, it would be more convenient to litigate in South Carolina, but there are two parties to this litigation and Noble Roman's maintains that it is more convenient for it to litigate in this district. Weighing these offsetting contentions regarding convenience clearly results in a draw, and a decision merely to shift inconvenience from one party to another does not justify a transfer. *E.g., Moore v. AT & T Latin American Corp.*, 177 F.Supp.2d 785, 789 (N.D.Ill. 2001), citing *Promatek Med. Sys., Inc. v. Ergometrics, Inc*., 1990 WL 19491, at *4 (N.D.Ill. Feb.15, 1990); *accord, Educational Visions, Inc. v. Time Trend, Inc*., 2003 WL 1921811, at *7 (S.D.Ind. April 17, 2003) (denying motion to transfer that would have merely shifted inconvenience between parties).

Significant to our analysis is the fact that the parties do not disagree as to the issues in dispute or the critical, underlying facts. This consensus should minimize the number of witnesses required by either side at a trial. Apparently, the parties stipulate that Brabham continues to use the same exterior shells for its food warmers that were in use when under

the Noble Roman's franchise agreements.[2]  The dispute between them arises over whether the franchise agreements permit such continued use, whether the warmer shell currently in use constitutes the "facade" as referenced in the agreement, and whether the red arch located at the top of the outer shell is part of Noble Roman's distinctive and protected trade dress or marks.

Brabham has not substantiated its assertion that South Carolina is more convenient for witnesses; it has not identified who they may be, what they will testify to, or whether their testimony could be offered through deposition if they were unavailable or outside the subpoena power of this court.  Brabham has generically identified its anticipated witnesses as its "employees."  The moving party who seeks a change of venue has the burden of establishing the convenience (or not) to witnesses necessary at trial.  *Coffey,* 796 F.2d at 219-20.  A proper analysis must include more than a mere head count of the anticipated witnesses and general references to where they live.  Case law makes it clear that a party moving under § 1404(a) for a change of venue must specify the key witnesses to be called and the nature and relevance of their testimony.  *E.g., Hawley v. Accor North America, Inc.,* 552 F.Supp.2d 256, 259 (D.Conn. 2008).  Brabham's motion falls far short of satisfying these requirements.

---

[2]Noble Roman's mentions in its brief that there has been an attempt at one store to alter the arch in the middle of the mantel, but Brabham argues that it can use the warmer shells as they are, without alteration.

Brabham's argument that the interests of justice are served by a transfer of this case to South Carolina is based on its contention that, to the extent any consumer confusion occurred, it would have happened in South Carolina, and, in addition, a South Carolina court would have the superior interest in ensuring that business in that state is conducted fairly and honestly. We do not deny that a South Carolina court would have a strong interest in enforcing laws that ensure fair business practices within that state. However, an Indiana court has an equally strong interest in assuring that contracts entered into here are enforceable, and a federal court in Indiana is more familiar with Indiana contract law, which applies in the interpretation of the franchise agreements, than the South Carolina court would be. Brabham again advances only superficial reasons unsupported by factual details regarding these interests-of-justice arguments, and as such they fall short of establishing that Brabham's interests outweigh those of Noble Roman's or that the deference due Noble Roman's choice of forum should not control the venue of this case. We therefore deny Brabham's request for a transfer of venue.

**Failure to State a Claim (Rule 12(b)(6) Fed.R.Civ.P. )**

Dismissal of a complaint is required if it fails to set forth enough facts to state a claim for relief that is plausible on its face. *Heyde v. Pittenger,* 633 F.3d 512, 516-17 (7th Cir. 2011). In making that assessment, we construe the allegations of the complaint in a light most favorable to the plaintiff, accepting as true the well-pleaded facts and drawing all possible factual inferences in favor of the plaintiff. *Id.* "Threadbare recitals of the

11

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 649 (2009). However, even after a claim has been adequately stated, it remains the movant's burden to establish that no set of facts consistent with the allegations of the complaint would support the claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

According to Brabham, the photographs which Noble Roman's attached as exhibits to its Complaint demonstrate on their face that no customer would ever be confused regarding the brand of food product being offered for sale at its stores. The photographs depict numerous large Domino's logos and menu displays at the location of the warmer. The photos include no reference(s) to Noble Roman's and no other vestige of earlier franchise operations other than the outer shell of the warmer. Without a likelihood of confusion, Noble Roman's various trade dress claims cannot succeed. *See CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660 (7th Cir. 2001).

"Seven factors comprise the likelihood of confusion analysis: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) whether actual confusion exists; and (7) whether the defendant intended to 'palm off' his product as that of the plaintiff." *Id*. at 677-78. Noble Roman's contends that the photos actually establish that Brabham is still displaying the red arch which is part of the Noble Roman's trade dress and protected

12

under the franchise agreement.  At this stage of the litigation, we do not weigh the evidence to assess the seven factors listed above.  Thus, Brabham's arguments must be deferred to the summary judgment stage of the litigation.

To avoid dismissal of its Complaint, Noble Roman's is required to set forth allegations which would establish the plausibility of its consumer confusion claim.  We think this has been adequately achieved, given Brabham's use of the red arch in its store designs as well as in advertising and in promoting its brand and franchises.  We cannot determine merely on the basis of the proffered photos whether a consumer would be confused on the basis of this design as to the food products being offered at the Brabham stores.  The photos are of some value in that regard, but we note that many are not particularly clear depictions; neither are they the sole evidence Noble Roman's intends to offer in support of its claim.  In submitting the photographs along with its Complaint, we do not believe Noble Roman's has pled itself out of court.  *See Tregenza v. Great American Communications Co.*, 12 F.3d 717, 718 (7th Cir. 1993).  What effect this evidence may ultimately have on our final judgment, we cannot determine at this early stage of the litigation.

Brabham's argument for dismissal based on the franchise agreement is that the contract makes clear that, following termination, the "facade" belongs to the franchisee.  Though the term "facade" is not defined in the agreement, Brabham notes that the term "system" is defined and includes those things which Brabham agrees it may not continue

to use following the termination of the franchsise agreement. A facade, or "warmer wrap," as Noble Roman's refers to it, is not specifically referenced in the definition of "system" nor is it listed as being uniquely identified with the franchise and thus not to be used by the former franchisee after termination of the agreement.

Noble Roman's rejoins that the term "facade" does not encompass the "warmer wrap." Rather, "facade" refers to what Noble Roman's calls the "housing unit" or "panel board" for the signage. Further, Noble Roman's contends that the definition of "system" in the agreement is clearly not inclusive of all protected marks. Nothing in the agreement specifically establishes Brabham's right to use the red arch on the warmer wrap. According to Noble Roman's, it purchased at least two of the "warmer wraps" at issue for the benefit of Brabham with the intention that they were to be used at the stores only as long as Brabham remained a Noble Roman's franchisee. These allegations by Noble Roman's against Brabham constitute a plausible claim. And that is as far as we can and should go at this point, leaving to another day a resolution of the merits of this complaint.

Brabham's final argument is that the red arch is not trade dress because the term "trade dress" refers to the "total image" of a product, not to a single part of the product presentation which is purely functional and lacks any distinctive qualities. We cannot based on photographs alone assess whether the referenced portion of the equipment is merely functional. While the red arch may not appear to be distinctive, the evidence may establish that it has a distinctive significance in certain contexts, comparable to

McDonald's famous golden arches present on the exterior of its fast food restaurants. Whether the red arch is protected as "trade dress" or as a "mark" turns on a factual record yet to be developed by the parties. We thus allow the case to survive this early attempt at dismissal and will wait to see how things develop.

### *Conclusion*

For the reasons explicated in this entry, Defendant's Motion To Dismiss Or In The Alternative For Transfer Of Venue (Dkt. #20) is DENIED.

IT IS SO ORDERED.

Date:

Copies to:

Peyton Louis Berg
BOSE MCKINNEY & EVANS, LLP
pberg@boselaw.com

Thomas R. Haley III
JENNINGS TAYLOR WHEELER &
HALEY
thaley@jtwhlaw.com

Margaret A. Molloy
JENNINGS TAYLOR WHEELER &
HALEY
mmolloy@jtwhlaw.com

David L. Taylor
JENNINGS TAYLOR WHEELER &
HALEY
dtaylor@jtwhlaw.com